oral argument. We begin with United States v. Chaney. Ms. Kuhn. Good morning, Your Honors, and may it please the Court. My name is Samantha Kuhn, and I represent Devin Chaney in this appeal. This appeal arises from a sentencing error that caused Mr. Chaney's guidelines range to increase by more than six years at the low end, and the government has asked the Court to dismiss the appeal based on broad waivers that were contained in his plea agreement before sentencing. So now this case raises two issues for the Court. One, the substantive sentencing error, and two, whether the Court should disregard the appeal waivers and reach the merits. I plan to first address the sentencing error itself and then focus the rest of my time on the appeal waivers. No, you really should do the appeal waiver first, because if we decide it's waived, then we don't decide the other issue. Yes, Your Honor, and I will say I do think that the context of how this error was made contributes to the appeal waiver, but I'm happy to address the appeal waiver itself first. Most circuits have recognized that courts of appeals have an inherent authority to disregard appeal waivers under certain circumstances, and those rulings are often  Are you talking about miscarriage of justice exception? Yes, they're often — But you know we don't recognize that. Well, the Court has never made a ruling on it. I believe this Court and the Eleventh Circuit are the only ones that have never addressed it and have routinely said that they have not acknowledged it yet. It hasn't — the Court hasn't foreclosed a miscarriage of justice exception. Many of the other circuits, some of them don't use that term. Most of them do, and they often tether it to this miscarriage of justice principle. Oftentimes they don't create a bright-line test or a specific rule. They have an enumerated exact circumstances that must be satisfied. It's often a discretionary determination that is a case-by-case determination about what's a miscarriage of justice. For example, in the First and Third Circuits, both of those courts — and the Third adopted the First Circuit's reasoning — the First Circuit said it's not a blanket rule. They would not earmark specific situations. It's more of a concept than a constant, and it's inherently a fact-specific inquiry. And so in the First Circuit, they identified certain considerations, such as the gravity of the error, the character, its clarity, the impact on the litigants, as considerations that the Court should factor in. But none of those are disqualifiers. None of those are specific requirements. There's no specific test. So you're saying to win this, to get past that threshold question, you've got to convince us to be the first panel to adopt a miscarriage exception, right? Yes, Your Honor. But you're pointing out that no court has ever said it doesn't exist. Right. No court has ever said that there is — Do you know whether the government's opposing it? To my knowledge, from the reply brief — or the response brief that the government filed after the motion was carried with the case, there was no response to the miscarriage of justice issue. So there's no indication about what the government's position is on miscarriage of justice. Okay. I guess — now, you — knowing your experience here, you won't be surprised for me to say, having looked into the record, did you all present this same issue a year ago in a case called Payton? Payton. Payton. U.S. v. Payton. I'm not familiar — If you did present the Gomez — what I'll call the Gomez-Broadway issue, which is this 4B1.2, if you presented it, and then the government moved to dismiss, based on an appeal waiver, and the response from your office was, that's foreclosed, we agree, we can't dispute it in front of you, but we want to preserve it to go to the Supreme Court, would you be able to make the same argument here? Do you understand? But — In other words, if a year ago you said, we aren't opposing the appeal waiver, we want to challenge appeal waivers generally in the Supreme Court, can you now, a year later, on the same issue, say to us, here we are opposing the appeal waiver? Yes, Your Honor, because, I mean, that is a different case, a different litigant. I'm not familiar specifically with Payton. I was not the attorney specifically on that case. But the fact that an issue like miscarriage of justice is not raised in one case doesn't prevent — But if you said there, the reason to address it is because it would cause a due process violation. It would be the exact same argument here. It would be a due process to put someone in jail as a career offender, if they're not a career offender. Sounds like the exact same argument. If there — I mean, I think it's different. If there's a concession that that is a foreclosed issue, and there's no effort to argue — Miscarriage. — this court has an open door for miscarriage of justice, I don't think that prevents this court from reaching a — Okay, then, I mean, you're right. Other circuits have all done it, but they've all done it in different ways. When I look at it, I couldn't find a single circuit that applies a miscarriage to a 4B1.2 calculation. In other words, is this person's predicate sufficient to be a — they're all saying, well, we would see a miscarriage if they got above the stat max. We would see a miscarriage if there was ineffectiveness, and especially if the person were sentenced for a constitutionally impermissible factor. But I don't see a single circuit that is disregarding an explicit waiver here, any aspect of sentencing, on the ground that a 4B1.2 calculation. Can you — so the question is, can you tell me what circuit would identify a miscarriage for a guideline application error like this? I think in this context, I would say the Ninth Circuit in Atherton is probably the most analogous factually to this situation. I guess before I go into Atherton, I do want to say that, you know, in the — I believe it's the Tenth Circuit, one of their four options for satisfying miscarriage of justice is just coextensive with Ilano's fourth prong. It's just whether it seriously affects the fairness, integrity, or public reputation of judicial proceedings. And so while they might not — I have not identified a case where they have specifically applied it. I think that is an open door for this court to exercise that discretion in that context. But with the case of Atherton, that circuit in particular has created a framework where they look for constitutional violations, whether procedural or substantive, in order to find a miscarriage of justice. And in that case, the error that was raised was about the factual information that the court relied on in reaching its sentencing determination. And so that was a procedural sentencing error issue. And the court found that that was something that was permitted to be reached on the merits. Now, they actually lost on the merits, but the court found that the appeal waiver didn't foreclose that because of the constitutional element to that issue. And so here, while it's a technically different issue, it's a guideline challenge, the way in which the court reached its determination and the manner in which it reasoned, or lack thereof, is the constitutional element to this. If you look at the ruling from the district court, the judge summarily adopted probation's response to the objection, which not even the government argued was necessary. Before he resolves his criminal case, your client, he knows his own criminal history, right? So then he sees the PSR that says, you're going to go to a jail for a long time because we count your history to be, and the defense attorney, not your office, doesn't move to withdraw. How could it be a miscarriage? In other words, that would suggest to me the defense attorney knew that was part of the bargain. He gets out of nine counts of 11, the government's going to dismiss, was it nine counts? Nine counts, I believe. So he gets a big deal from the government. And in exchange, he's saying, I won't dispute that I'm a career offender. Well, there's no concession about career offender. Right, but he doesn't move to withdraw. When he sees the probation saying, district judge, you should sentence him as a career offender, he didn't move to withdraw, saying, that is not what I expected at all. I want to get out of this guilty plea. Correct, but he objected to the career offender enhancement. He presented his arguments. Yes. And for basically going into the plea agreement, I think the expectation is that the judge is going to adjudicate the legal issues fairly and properly in the sentencing proceeding. And so from my perspective, reading that record, I think it actually supports the opposite conclusion that the defense attorney reviewed his criminal history, presumably with the client, determined he was not a career offender based on the same issues he raised, and understood that the sentencing judge would adjudicate this issue. And instead, the sentencing judge just deferred deprivation. Right, I haven't seen that language before. Any aspect of sentencing. Correct, and it's a waiver of the right to appeal the aspects of sentencing. The assumption underlying that appeal, or that waiver of appeal, is that the district court judge is going to adjudicate the issue in the first instance. Wouldn't that knock out waivers always? Every single sentencing error. I didn't. You can just say, well, it's grossly unfair that he didn't adjudicate it the way I think he should have. Reserving our issue about sentencing appeal waivers generally, that I do believe that those are not constitutional and not fair. For this particular instance, for this miscarriage of justice exception in this specific case, the issue here is not just of garden variety. Oh, there was two arguments. The judge considered them, balanced the factors, balanced the information, and made a determination that the litigant didn't like. This is a problem where the record shows the judge did not actually adjudicate the issues because he simply deferred to probation, who cited a clearly, facially meritless basis to apply the queer offender handsmit. The only reason that probation gave, which the judge adopted, was to rely on this Bell De Sia Mancinas case. But that case, first of all, was involved in pre-2018 marijuana conviction, whereas Mr. Chaney's was 2019. It was an affirmance on plain error review, which required clear and obvious error, and the court relied only on the lack of precedent in this circuit to find that the litigant couldn't win because he hadn't raised it in the district court. And in fact, Judge Higginson, in the concurrence, you explained why in that case you would find error, it just wasn't clear or obvious. And so, if anything, that case actually— Citing Gomez. I'm sorry? Citing Gomez. Correct. Gomez, the split is deep and unfavorable to—I was on Gomez also, but beginning to wonder if I got that right. Of course, you're going to say we did. Yes. But the statutory language, it says state law offenses count. Well, and I guess my point to that, separating from the merits, the miscarriage of justice issue, is that by accepting probation's justification and deferring to probation in that instance, when that's the case they cited that had no bearing on the issue before the judge, the judge clearly didn't engage in the type of consideration and adjudication of the merits of this issue. Not even the government, in their response to the objection, cited that case. The government didn't advocate for probation's response. And still, the district court just passively said, I think probation's right, and he's a career offender, and that's that. And so, in that instance, the court should exercise its discretion to look at the record and see what it shows about what happened in the district court proceedings. This court does that routinely in harmless error analysis, in plain error review. The court looks at the record to ascertain what happened in the proceedings, if there would be a miscarriage of justice, what the district court's conduct was. The only way there could be a miscarriage is applying the very counterfactual notion that maybe his predicate involved hemp. The whole concept behind Gomez is applying the categorical approach, it's possible Louisiana would have prosecuted for hemp alone. That's broader. That's the logic. But that is a counterfactual formula. So, I'm still not convinced there would be any circuit that would say that's a miscarriage. I guess, sorry, I'm not following the question. You're saying that the miscarriage of justice necessarily relies on the success of the merits? No, I guess I'm moving you, even if we were to recognize a miscarriage exception, how could this be one? It's a guideline calculation, 4B1.2. Does a predicate count? The only way this counts, the only way this doesn't count is if we go through the formula and say, counterfactually, it's possible Louisiana would have prosecuted him for hemp. We're not going to look at his case, right? That's what we're doing in Gomez, correct? That doesn't sound like a miscarriage. So, the miscarriage element, in addition to the guideline issue, is, in my view, the lack of adjudication in the district court, the lack of fair proceedings. Oh, I see. It is a lack of an opportunity to actually have this adjudicated on the merits in the first instance. Again, like in Atherton, in Atherton, the litigant didn't actually succeed, at the end of the day, in getting his sentence vacated and getting remanded. He lost on the merits. But the court still found that, given the circumstances, that the nature of that error, the constitutional element of it, warranted disregarding the appeal waiver and proceeding to the merits. And so that's the aspect of this that takes it out of the standard guideline. So it's a process error. Judge Guidry, at sentencing, just in one paragraph, said, I agree with probation. Correct. What's your best case that that's error at all? Why can't a sentencing court just do that? Your objection is preserved, but I agree with probation. Don't they do that all the time? Well, I think in here, it's, again, a case-specific issue where probation's justification was facially meritless. It didn't provide any reason why this should apply to him. And so the summary adoption of that shows that the court didn't actually engage in the proper analysis. That turns on Beldusia being off point, because it's a plain error case. Correct, which defense counsel pointed out to the court. And then separate from that, I do want to just briefly address the plea agreement. You mentioned earlier with the plea agreement, the balance of benefits. The exchange was not, I will forfeit my appeal waivers in exchange for you dismissing these charges. It was, I will plead guilty to these two charges in exchange for you dismissing others. In addition, Mr. Chaney agreed to pay restitution for all of the claims. And there's also a sealed portion of the plea agreement that provided additional benefits to the government. I do, you know, the court also has seen the record is lengthy. There's a lot of mitigation in Mr. Chaney's history. And so we don't know what factors went into the government's decision to offer this deal. But I don't think it would be a fair conclusion to say that, well, he got the benefit of these dropped charges, and that was for the appeal waivers, when we know, especially in this district, that is a boilerplate routine aspect of all plea agreements. And I see my time has expired. So did you get the, I interrupted your train of thought by asking you to address the appeal waiver, and you used all your time answering questions. Is there anything else about the merits that you'd like to say in your opening? If so, you can have two minutes to do that. Sure, Your Honor. Thank you. I appreciate that. Just briefly, we touched upon it a little bit. But as far as Broadway goes, I think that that case clearly does show the realistic probability that's required from Castillo-Rivera. I do want to point out, in response to the government's 28-J letter, they brought up Brown. I know this court has already held that Taylor did not abrogate Castillo-Rivera. In Kerstetter, we acknowledge that that seemed to foreclose our argument. But in Brown, the Brown court dealt with state conviction versus federal conviction in the drug context. And it does specifically talk about whether the schedule's matched. And so I do think that that provides additional support for the argument that the actual case realistic probability test is not sanctioned by a Supreme Court case law. And so I just wanted to point that additional point out. Both parties agree the categorical approach applies here? Why wouldn't modified categorical apply if we're just addressing the merits issue? Well, even if modified... The state crime is not a divisible one? The state crime, I believe, even if it's divisible, it would be divisible to marijuana. So I haven't looked at it lately to see what the breakdown of the actual controlled substances within the schedule are and if that's required or not. But in any event, even if marijuana could be the combination of lawsuits and convictions, having modified any statute and requiring the case to medially follow the true procedure I imagine wouldn't be consistent with a controlled substance schedule. All right. You saved time for rebuttal. Thank you. All right. Good morning, Your Honors. May it please the court. Christine Calagaro here with Kevin Boydman on behalf of the merits of Mr. Cheney's sentencing challenge. What I plan to do is talk about what I think is the easiest issue before the court, which, as you guys identified, is the enforcement of the appellate waiver. We filed a motion to dismiss based on the broad and binding appellate waiver in Mr. Cheney's plea agreement. That motion is still pending. It's been carried with the court with the case. We think that the panel should grant our motion and dismiss this appeal. We did reassert it in our brief, and we are still trying to enforce the appellate waiver. Let me ask you, if the waiver is invalid, did the sentencing court get the sentence wrong? No, and that would be the second part of my argument was going to be to address his sentencing challenges, which I could jump to if you want, or we could talk about the appellate waiver. Go ahead. I just want to make sure you cover that. Yeah, so if the court does want to reach the merits of his guideline challenge, we think the district court should be affirmed for two independent reasons. The first is that the defendant did not point to a Louisiana case that showed a realistic probability that Louisiana applied its controlled substances statute to him. That's the Broadway case, and we don't think it qualifies under this court's realistic probability test. Second, we believe that the term controlled substance in 4B1.2 of the guidelines should be defined with reference to state law and not the CSA, and I plan to address, I can address each of those. But that, I saw your 28A, but am I wrong? That's asking us to disregard Gomez. I disagree, Your Honor. So it would be inconsistent with how this court has handled the drug trafficking offense, how this court has defined drug trafficking offense in 2L1.2. But that was a different section of the guidelines. This court has never explicitly addressed 4B1.2. We have a lot of law saying we bring the same analysis from 2L to 2. There is a lot of law that says that you do treat them interchangeably. I acknowledge that. But there's never been a case in this circuit that then applied Gomez-Alvarez to 4B1.2. It's still an open question in this circuit, and a lot of other circuits have acknowledged that, including Justice Sotomayor from the Supreme Court said it's still an open question in the Fifth Circuit. So we did feel like we needed to raise it to the panel. Is it true that the suggestion that in the Eastern District of Louisiana, every single guilty plea requires an appeal waiver? I don't know the answer to that, Your Honor. I know that it's pretty standard for our office to include them in guilty pleas, but I don't know if there's ever any exceptions to their inclusion. And what's the government's position on if that's true, every single guilty plea has got to have a waiver to get any type of bargain from the government? Does the government accept, is the position of the government that our circuit should recognize or can recognize a miscarriage exception if later on we get to sentencing and there's a gross unfairness that no one anticipated? Are you saying, no, we shouldn't adopt the exception, or we should, but this case doesn't rise to that level? So like the defendant acknowledged, and like the panel has acknowledged, the Fifth Circuit has never adopted the miscarriage. I'm asking what's the government's position if every other circuit has, and as I understand it, the U.S. Attorney Manual tells you that courts will. I'm not sure that every other circuit has. Has any circuit not? I thought the defendant named a few circuits that had it, but I'm not positive. But even if the court were inclined to adopt a miscarriage of justice exception. I'm really trying to pin down, is the government recognizing that in order for appeal waivers to work, especially if they are required, there's got to be a safety valve? Or are you saying once you contract with the defendant, something like we don't even have jurisdiction? There is no way out. We have to dismiss. I think the court has said that it's not a jurisdictional issue. It is a contract between the parties. But the court has said that as long as it's knowing, voluntary, and this appeal falls within the scope, they are enforceable. I don't know of any law in the circuit that would not set them aside. Last time I'll ask it, does the government agree that if we saw something truly, for example, a district court sentences someone because they're a minority or based on their race, would the government still say, nope, we have to affirm the sentence, it was waived? I think in that situation, because it's a contract between the parties, the government could choose not to enforce it if it wanted to. The government could, but the court can't. I don't know of any way that the court can set it aside under this court's precedent, unless the court does adopt the miscarriage of justice exception that other circuits have adopted. And if the court wants to do that, that's an option. But it certainly wouldn't apply in this case. The cases that the defendant has cited, for instance, the Atherton case, the Ninth Circuit has said, we've come up with this exception to allow us to reach constitutional challenges to a defendant's sentence. In that case it was a due process challenge. Here we don't have that. We have a pure legal disagreement over how the sentencing guidelines should be applied. And I don't know of any circuit, and like you pointed out, I don't know of any case that has applied a miscarriage of justice exception to a situation like this, where it's just a pure disagreement over how the sentencing guidelines were applied. But it does sound pretty egregiously unfair if a person's in jail for a career offender term when, in fact, if the government agreed that there wasn't a valid predicate. How would that not be a miscarriage? Let's assume their argument here were locked tight. We knew the predicate wasn't valid. But when he pled, he had agreed to waive any attack on sentencing. Wouldn't that be a terrible miscarriage to have this person in jail for, say, 20 years when even the government admits there isn't a qualifying predicate? At the time the defendant agreed, though, he knew what the max penalty he's faced. Less than the stat max. Correct. And this was far within that. No, but just answer just as a human. If the defendant were in jail for 20 years based on something even the government agrees actually doesn't justify it, how is that not just, when you think from a dictionary standpoint, how is that not a miscarriage? Yeah. I mean, again, in that case, the government could decide to enforce the appellate waiver if they saw something that happened like that. That didn't happen in this case, though. And I just don't know of any basis in the circuit for setting it aside in that situation. And even in the cases that they cite where the courts have adopted this kind of approach, it's to reach out and decide a constitutional issue, which they haven't raised anything like that here. And I also disagree factually on the district court's review of this legal issue. The district court was very clear that it read and reviewed everything before it. It said, I've reviewed the defendant's objection, I've reviewed the response, I've reviewed probation's response, I've reviewed the sentencing member, I've reviewed the government's response. And then he opened it up and said, do you have any other arguments? And they said no, and then he decided a purely legal issue and said, I agree that this enhancement should apply. I don't think there was anything unusual about what the district court did here that would warrant this brand-new rule from the circuit that the courts never adopted before. So explain to us in detail what was the ñ there was a benefit of the bargain, obviously. Right, and that's the last thing on the appellate waiver is this defendant got an enormous benefit from pleading guilty. He was charged in an 11-count indictment that detailed five separate armed robberies that took place in a three-week period of time in December of 2021, and that included five separate 924Cs, which each would have carried their own minimum seven-year sentence. So he was looking at a minimum of 35 years, and he pled guilty. We dropped nine of the counts, and he pled guilty only to two. So he got a very significant benefit from this plea agreement, which is part of what motivated our decision to enforce it. Just conceptually, if that's true, he got a huge benefit, and your position is he's breaching. Part of his deal was he wouldn't appeal, but here we are in an appeal. So why isn't the relief the government just now prosecutes him on all 11 counts and puts him in jail for all the mandatory minimums? Why isn't that normally the remedy for a contract breach? Well, we're trying to enforce our contract right now, but if the court did decide to reach the issue and let him appeal it, which would be a violation of the contract, then I do think the result would be— Well, he has appealed. He filed the notice. I'm just wondering intellectually why the government isn't going back into district court saying, we've got a breach contract, we're out of it, and we're going to prosecute it, instead of coming to us and saying, you've got to put the court imprimatur on this private contract the two parties negotiated. I think it's pretty standard for our office to try to enforce these as the first step. And if we did end up back in the district court, I do think we'd ask that the whole plea agreement just be thrown out, because he has violated it, and we can start over with all 11 counts. If he went back to court to try the case, has he committed any other offense that would serve as a predicate for this enhancement rather than the— We raised that in our brief, but we did withdraw it in our 28-J letter. So he has a second-degree battery charge that would qualify as a crime of violence, except that it might be too old. And that's really going to depend on whether or not he ended up serving a year in prison for that conviction, and the record that we have before us isn't clear on that. He did receive a suspended sentence, and so it would not count under the guidelines as a sentence over one year and one day. However, he was then arrested while he was on probation for incest, and the record's not clear about whether or not he then had to go back to prison. So I think if this case did get remanded, we could explore that further. So now I'll turn briefly to the substance of his sentencing challenge, which, again, we think, like you asked, we think the district court was right. So even if you did get to the substance, we think the district court should be affirmed, and that's on the two bases that I mentioned. The first is the realistic probability test. Under this court's binding precedent, when a defendant is objecting that a state statute is overbroad, they have to show a realistic probability that the state would have applied the statute in that overbroad way. So he needed to come forward with an actual case from Louisiana that applied its controlled substances statute to the substance of hemp, as that substance is defined in the CSA. And it has a very specific and technical definition. And I'll paraphrase it, but it's a part of the cannabis sativa L plant with a delta 9 THC concentration of less than 0.3 percent. So he needs to show that Louisiana applied its statute to that substance, and he hasn't come close to doing that. He cites the one case that Ms. Kuhn mentioned, the State v. Broadway, but we don't believe that that case satisfies this court's realistic probability test for several reasons. First, if you look at the posture of the case, it's an appeal from a motion to suppress. So the court's just looking at whether the constitutionality of the officer's search of this defendant's trailer. The court isn't talking about the statute that he was charged under, the elements of the statute. They aren't talking about hemp and whether hemp would qualify as marijuana. There's no discussion of any of that. And if you look at this court's en banc decision in Castillo-Rivera, you can see why that case, the Broadway case, wouldn't meet this court's test. I think that the Castillo-Rivera decision's treatment of the Boston case in that decision was really instructive. There you were dealing with the issue of whether an air gun qualifies as a firearm under Texas law, and even though the defendant in Boston had been prosecuted for use of an air gun, the court said the appellate court really didn't decide as a matter of law that an air gun qualified as a firearm under Texas statute. Here there's no question. Broadway did not decide whether hemp qualified as marijuana. That's just not something that even remotely came up in that decision. But it's pretty rare for courts to decide facially if something counts. In other words, would you agree when we're trying to ask is there even a realistic probability something will be prosecuted, the gold standard is you find a case that says yes. Sorry, can you repeat? I'm not sure I'm hearing you. If we're asking again this counterfactual of back in history, would a state have prosecuted hemp under its marijuana prohibitions? The gold standard to say yes, there is a possibility, is an actual published opinion from a court of appeals that describes the particular product as being within the orbit of something that can be prosecuted. There's no better evidence of a possibility. Right, but in this case, the court doesn't, we don't know what substance the defendant was prosecuted for. But they mention hemp. There's one reference to hemp. There's about 40 references to marijuana accounted. There's one reference to hemp. It comes towards the end of the opinion. It's kind of in passing. The court's giving an alternate reason for its holding, and it paraphrases the officer's testimony and says the officer found a healthy hemp plant. That doesn't tell us whether that plant meets the definition under the CSA of hemp. There's no indication that anyone tested the plant. There's no labs discussed. There's no, you know, chemical makeup. You're saying because it wasn't dispositive or because it's dicta, it doesn't count. And because we can't tell. I'm not disagreeing, but do you have any case law, because every single circuit in this country is trying to ascertain whether states would or wouldn't have prosecuted. Do you have any case from any circuit that says, well, a passing reference to something doesn't count? I think the best case is the one that we cited in our brief, the Alexis V. Barr case. There, this court was dealing with a similar question, but it was with position isomers of cocaine. And in Alexis V. Barr, the court rejected the state cases that the defendant was relying on and said, look, those weren't specifically analyzing position isomers of cocaine. The court says at one point, yes, it's possible the defendant was prosecuted for position isomers of cocaine, but it's also equally plausible that he was not. And that possible but equally plausible wasn't enough for this court. And that would be the same here. We don't know based on one passing. You know, hemp in everyday language can mean a lot of different things. I think more so than in these other drug variant contexts, just a passing reference to the word hemp just doesn't do the trick here. And I'll also just point out, I know you were saying, I do think that if Louisiana truly was prosecuting people for industrial hemp, we would be able to find at least one case in the history of Louisiana where that's discussed. You could imagine one case where the difference between hemp and marijuana are discussed or where defendants are coming forward and complaining and saying, wait a second, you know, I was just growing this to make rope or I was just growing this to make paper. This isn't a drug. There's not a single mention of that, and that's because Louisiana wasn't doing this. The reason it's so hard for the defendant to find a case is because it wasn't happening. And that's the entire purpose of this court's realistic probability test. So we think applying, just straightforward, applying Casilla-Rivera-Broadway wouldn't meet that standard. Would the Valdezilla case help or hurt you? It's kind of indifferent. It's a plain error standard, and so the court really didn't get to it. I mean, they just say that this court has never decided one way or another. It's a sentencing error, but it's not a clear error because we haven't really resolved it. Correct. But if you agree that it is a sentencing error. I'm not sure. We don't agree that it is a sentencing error. I'm not sure I'm following your question. In Valdezilla, at least that was one of the divided opinions conclusion. Yes, sentencing error. Correct. Not plain error. Correct. And I do think that the state of the law, like you recognized, has changed a lot since you wrote that concurrence in Valdezilla. In fact, some of the decisions that were cited there have kind of come out the other way. I think the Sixth Circuit might have flipped, and then one of the decisions might have been overturned by the Supreme Court's decision in Brown. So I do think the state of the law has changed a lot since then. So, I mean, we can talk about the second reason we think the district court should be affirmed is because we do think that the term controlled substance should be defined with reference to state law and not the CSA, and that would be following seven circuits that have recently reached this issue and decided that controlled substance should be defined with reference to state law. And the most recent one was the Dubois case that we cited in our 28-J letter just earlier this year. The Eleventh Circuit does a really good job of surveying the state of the law, talking about how all the circuits have come out on that. But it is saying Gomez is wrong. Well, so Gomez – Didn't the Dubois – the Eleventh Circuit say Gomez is wrong? I think the Dubois case recognized that Gomez was in a different – was interpreting a sentencing. It didn't say it's wrong because it overlooked the statutory language? No, it might have also said that, but it did recognize that the Gomez-Alvarez case was interpreting a different section of the guidelines, and a lot of the circuits have pointed that out. What these circuits are really moved by is it's a textual argument. First of all, the definition of controlled substance does refer to an offense under state law, and it specifically refers to state law. The courts apply the ordinary meaning of a controlled substance, which is a drug regulated by law, and, again, the guidelines tell us that that can be under state law. And what they find really moving is the fact that 4B1.2, the definition of controlled substance, does not include anywhere a cross-reference to the CSA. So these circuits, seven circuits who have looked at this issue more recently, have just declined – we're not going to add a cross-reference to the CSA where 1 doesn't exist. And that's in direct contrast to the ACCA that does define serious drug offense with reference to the CSA. And I'll just point out one other thing because I know you are mentioning Gomez-Alvarez and how we've treated 201.2. Not only is it a different section of the guidelines, but the issue really wasn't discussed by the parties. If you go back and look at the briefing and the oral argument in Gomez-Alvarez, the government didn't come forward with this argument about looking to state law instead of the CSA. So it wasn't an issue that the panel had an opportunity to really dig into. And I find it the most striking if you listen to the oral argument from that case, it's not even mentioned once by any of the parties. I mean, you'd be shocked to know it was even an issue that was going to be impacted by that decision. And I'll also point out that the state of the law, like I mentioned, has changed drastically. That was a 2015 case, and these seven circuits that have come out the other way, they didn't start until 2020, so it's five years later. Before your time elapses, do you agree the categorical approach applies here? So you're not saying that you can prevail also because it actually is a modified categorical? Correct, Your Honor. I do think there is case law in this circuit that says that this Louisiana statute is divisible, but it wouldn't get you down to a certain section of the marijuana definition. Unless Your Honors have any other questions, I see my time is up. Thank you, Ms. Calgaro. Ms. Coon for rebuttal. Thank you, Your Honor. Just to address a few points from the government's argument, first of all regarding whether the argument about the Controlled Substances Act issue is foreclosed, I do want to draw the Court's attention to Mendez-Henriquez, which is cited in the reply brief. In that case, this Court specifically said, under the in pari materia rule of statutory interpretation, effectively imported to the guidelines interpretation, our Court's interpretation of 4B.1.2 informs our interpretation of 2L.1.2. Given the two guidelines' identical language and closely aligned purposes. Similarly, in Bautista, the Ninth Circuit case, they applied Leal-Vega, which was the case this Court adopted, to 4B.1.2, explaining there was no meaningful way to distinguish them. So that argument, I would argue, is foreclosed. Regarding Broadway, in that case, there was not just a passing reference to the hemp plant. The Court was talking about testimony of an officer who identified it, who was present on the scene, and who identified it as a healthy hemp plant that they seized from the yard. And in that case, the government actually defended its conviction and argued suppression was irrelevant because he was prosecuted on the plant itself. I do also want to point out, you know, the government argues that, or asserts that Louisiana has never or was not prosecuting hemp, but has cited no evidence or indication to show that. There's no indication that's true. And as far as the prosecution goes, the fact that Louisiana Congress then carved out hemp, I think contributes to that realistic probability showing that there was a realistic probability of that prosecution. Otherwise, there would be no reason to make that distinction in the law. What about her citation to Alexis v. Barr? Alexis v. Barr, I don't think, assists the government. In that case, there was no reference in the underlying or any underlying state case to position of isomers or positional isomers, which was the, I guess, colloquial, the way to describe the broader version of the drug. In that case, it was basically there was two bags of cocaine. One, they were different colors, and they were treated the same as cocaine. But there was no mention of position of isomers. Here, we have a case that actually is specifically identifying hemp as the plant. And as the Moberly article that's cited in the briefing discusses, hemp plants and marijuana plants are visually distinct. And so I think we can take the court at its word and the law enforcement officer who sees that and who pursued that prosecution at their word that it was, in fact, hemp. And then briefly, to address some of the due process issues and, you know, what we discussed about before with the fair adjudication, in Newton v. or town of Newton v. Rummery, the Supreme Court was talking about well-established contract principles and specifically that a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement. And the courts, when they've recognized this miscarriage of justice exception and addressed appeal waivers, courts have routinely recognized that that can be a carve-out. That's not something for a breach of contract to warrant throwing out the agreement entirely. There has to be a material breach. And oftentimes when the courts have found that a specific appeal waiver should not be enforced due to a miscarriage of justice, that is a specific exception that's found. It does not become a breach of contract issue. In this case, the gravity of the error was huge, as we talked about. I guess, I mean, no court's done this, so it must be wrong, but let's, you say you, the bargain did say any aspect of sentencing, and now you want to go back on that. You don't want to have lost your opportunity. Why can't the government then go back on the nine counts? Why don't we just send it back to district court? Everyone goes back to square one. You can appeal sentencing issues, but they, why do they lose the right to charge the nine counts that was bargained for? I think the question for that would turn on whether they could show that this was a material breach of material terms of the contract. And as we discussed, the appeal waivers in these agreements are boilerplate. I mean, the terms of this agreement and the exchange, the bargained for exchange, was plea versus dismissal. And so I think it would fall on the government if they decided to pursue that to assert that this was a material breach and that they wanted to pursue a full prosecution. Now, when the government decides to make plea offers and enter plea negotiations, it's not always just the benefit exchange. The government's also tasked with exercising discretion to decide what's fair, what's just, based on the circumstances of the person. And so I think in this case, the government very likely determined that a 35-year sentence was far greater than necessary for this individual, for the crimes that were committed. We don't know. Neither me nor the appellate attorneys, I believe, were involved in the plea negotiations, so that's an open question. I see my time is up. If anyone has any other questions. Thank you, Ms. Coon. Your case is under submission. Next case.